UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PETE PETERSON,<br><br>   Plaintiff,<br><br>  v.<br><br>LYFT, INC.,<br><br>   Defendant. | Case No. 16-cv-07343-LB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING ACTION**<br><br>Re: ECF No. 39 |

## INTRODUCTION

Plaintiff Pete Peterson brings this putative class action against the ridesharing company Lyft, Inc. Lyft twice denied Mr. Peterson's applications to be a driver, based on a background "consumer report" that a screening company ran on Lyft's behalf on Mr. Peterson. Mr. Peterson alleges that Lyft violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., which provides that a person or entity using a consumer report for employment purposes must provide the subject with certain information — a copy of the report and a written description of the subject's rights under the FCRA — before it can take any adverse action based on the report. 15 U.S.C. § 1681b(b)(3)(A). Lyft moves to compel arbitration of Mr. Peterson's FCRA claim based on an arbitration provision contained in its Terms of Service. The court held a hearing on November 15, 2018.

1   The court finds that (1) the parties entered into a binding agreement that contains an arbitration

2   provision, (2) the parties in their arbitration provision delegated questions about the arbitrability of

3   disputes — such as whether Mr. Peterson's FCRA claim falls within the scope of the arbitration

4   provision — to the arbitrator, and (3) the arbitration provision is enforceable and not

5   unconscionable. The court grants Lyft's motion to compel arbitration and dismisses this action.

### STATEMENT

#### 1. Lyft's Terms of Service and the Arbitration Provision

Plaintiff Pete Peterson created two Lyft accounts through the Lyft app.[1] In the process of creating these accounts, he was presented with a screen listing the Lyft "Terms of Service."[2] Individuals confronting this screen can scroll through the text of the Terms of Service and must click "I accept" to complete the creation of their Lyft accounts.[3] When someone presses the "I accept" button, a message is sent to Lyft's server, which records the timestamp of the user's clicking the button.[4] Lyft's records show (and Mr. Peterson does not deny) that Mr. Peterson clicked the "I accept" button in connection with his first Lyft account on December 13, 2014, and clicked the "I accept" button in connection with his second Lyft account on February 28, 2015.[5]

On December 13, 2014, the Terms of Service that were in effect, and that the Lyft app displayed for Mr. Peterson, were a version dated November 19, 2014.[6] On February 28, 2015, the Terms of Service that were in effect, and that the Lyft app displayed for Mr. Peterson, were a version dated December 22, 2014.[7] Both Terms of Service contain the following provision:

---

[1] Lauzier Decl. – ECF No. 39-1 at 3 (¶ 6). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶ 7).

[3] *Id.* at 4 (¶ 8).

[4] *Id.*

[5] *Id.* at 3 (¶ 6), 4 (¶¶ 10, 12).

[6] *Id.* at 4 (¶ 9); *see* Lauzier Decl. Ex. A (November 2014 Terms of Service) – ECF No. 39-2.

[7] Lauzier Decl. – ECF No. 39-1 at 4 (¶ 11); Lauzier Decl. Ex. B (December 2014 Terms of Service) – ECF No. 39-3.

ORDER – No. 16-cv-07343-LB            2

**Agreement to Arbitrate All Disputes and Legal Claims**

You and We agree that any legal disputes or claims arising out of or related to the Agreement (including but not limited to the use of the Lyft Platform and/or the Services, or the interpretation, enforceability, revocability, or validity of the Agreement, or the arbitrability of any dispute), that cannot be resolved informally shall be submitted to binding arbitration in the state in which the Agreement was performed. The arbitration shall be conducted by the American Arbitration Association under its Commercial Arbitration Rules (a copy of which can be obtained here), or as otherwise mutually agreed by you and we. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Claims shall be brought within the time required by applicable law. You and we agree that any claim, action or proceeding arising out of or related to the Agreement must be brought in your individual capacity, and not as a plaintiff or class member in any purported class, collective, or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative, collective, or class proceeding. YOU ACKNOWLEDGE AND AGREE THAT YOU AND LYFT ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.[8]

## 2. Mr. Peterson's Applications to Drive for Lyft

In December 2014, Mr. Peterson applied to drive for Lyft.[9] Lyft requested a background-screening report from Sterling Infosystems, Inc., one of the largest employment-background-screening companies in the nation.[10] In early January 2015, Sterling completed its report and delivered it to Lyft.[11] The report adjudged Mr. Peterson ineligible for employment based on Lyft's hiring criteria.[12] Lyft did not provide Mr. Peterson with a copy of the Sterling report or a copy of his rights under the FCRA.[13]

---

[8] Lauzier Decl. – ECF No. 39-1 at 5 (¶ 13); Lauzier Decl. Ex. A (November 2014 Terms of Service) – ECF No. 39-2 at 14; Lauzier Decl. Ex. B (December 2014 Terms of Service) – ECF No. 39-3 at 23.

[9] First Amend. Compl. ("FAC") – ECF No. 22 at 4 (¶ 15).

[10] *Id.* at 3 (¶ 11), 5 (¶ 18).

[11] *Id.* at 5 (¶ 18).

[12] *Id.* (¶ 19).

[13] *Id.*

In December 2015, Mr. Peterson communicated with Lyft, saying that his application was denied the previous year and asking to be reconsidered.[14] A Lyft representative contacted Mr. Peterson and asked him to provide the telephone number or email address associated with his first application so that Lyft could locate his file, including his Sterling background report.[15] Mr. Peterson provided the phone number that he used for his 2014 application.[16] A Lyft representative then contacted Mr. Peterson and told him that Lyft uses Sterling to conduct background checks and that Mr. Peterson should contact Sterling directly "to dispute the charges" on his profile that made him ineligible for employment.[17] Lyft did not notify Mr. Peterson in writing that it took adverse action against him and did not provide Mr. Peterson with a copy of the Sterling report or a copy of his rights under the FCRA.[18]

In May 2016, Mr. Peterson was able to see the Sterling report for the first time.[19] The report had grading for six separate categories, all of which were "Complete" or "Clear," with the exception of the county-criminal-record-search category, which had a grading of "Consider."[20]

## ANALYSIS

"The Federal Arbitration Act (FAA) requires courts to 'place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Lyft argues, and Mr. Peterson does not meaningfully dispute, that Mr. Peterson's clicking of the "I accept" button rendered the Lyft Terms of Service a binding contract

---

[14] *Id.* (¶ 20).
[15] *Id.* (¶ 23).
[16] *Id.* (¶ 24).
[17] *Id.* at 5–6 (¶ 25).
[18] *Id.* at 6 (¶ 26)
[19] *Id.* (¶ 27).
[20] *Id.* (¶ 28).

1  between him and Lyft. *Cf., e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d
2  1155, 1166 (N.D. Cal. 2016). It thus is enforceable according to its terms.

3  The parties dispute two issues: (1) whether Mr. Peterson's FCRA claim is arbitrable (as
4  defined in the arbitration provision in the Terms of Service) and (2) whether the arbitration
5  provision is unconscionable. For the following reasons, the court holds that (1) the parties'
6  contract delegates questions of whether Mr. Peterson's FCRA claim is arbitrable to the arbitrator
7  and (2) the arbitration provision is not unconscionable.

### 1. Delegation

#### 1.1 Governing Law

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (emphasis in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "[I]f there is clear and unmistakable evidence of an intent to delegate, a court should inquire as to whether the assertion of arbitrability is 'wholly groundless.'" *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *4 (N.D. Cal. Mar. 18, 2016) (citing *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)). "If a court finds that the assertion of arbitrability is even loosely related to the claims, 'it should stay the action pending a ruling on arbitrability by the arbitrator.'" *Id.* at *7 (quoting *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 975 (N.D. Cal. 2015)).

#### 1.2 Application

The parties' arbitration provision here expressly provides that "legal disputes or claims arising out of the Agreement (including but not limited to . . . the arbitrability of any dispute), . . . shall be submitted to binding arbitration[.]" As another court in this district has held in connection with this same Lyft Terms-of-Service arbitration provision, this language "explicitly refer[ring]

arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to the arbitrator." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 954 (N.D. Cal. 2015) (citing *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005)).

Additionally, Lyft's assertion of arbitrability here is not "wholly groundless." *Cf. Khraibut*, 2016 WL 1070662, at *4. The Terms of Service say the following:

> By accepting this Agreement, a Driver agrees that We may obtain information about the Driver, including without limitation the Driver's driving record, references and credit information. A Driver hereby authorizes Us to perform a background check on Driver, and further agrees to provide any necessary authorization to facilitate Our access to the Driver's official driving record, references and credit information during the term of the Agreement.[21]

Mr. Peterson's FCRA claim arises out of Lyft's background checks, and hence the claim is at least loosely related to a "legal dispute[] or claim[] arising out of the Agreement" that the parties agreed to arbitrate. *Cf. id.* at *7.

Mr. Peterson argues that parties cannot delegate questions of arbitrability to an arbitrator by incorporating into their agreement by reference the American Arbitration Association's ("AAA") arbitration rules.[22] But the parties did not delegate questions of arbitrability to an arbitrator by incorporating the AAA rules. Instead, the parties' contract expressly delegates questions of the arbitrability of any dispute to the arbitrator. Mr. Peterson's cases — which involve arbitration provisions that did not expressly delegate questions of arbitrability to the arbitrator and instead relied on provisions in AAA rules about delegation — are inapposite. *Cf. Loewen*, 129 F. Supp. 3d at 966 n.4 ("Plaintiffs cite cases holding that mere reference to the Commercial Rules is

---

[21] Lauzier Decl. Ex. A (November 2014 Terms of Service) – ECF No. 39-2 at 5; Lauzier Decl. Ex. B (December 2014 Terms of Service) – ECF No. 39-3 at 9.

[22] Pl. Opp'n – ECF No. 49 at 7–8.

ORDER – No. 16-cv-07343-LB   6

insufficient to delegate authority in contracts of adhesion in the context of consumer disputes. However, in this case there is an express delegation clause in addition to reference to the AAA Commercial Arbitration Rules, so these cases are inapposite."); *accord Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 WL 4334770, at *6 (N.D. Cal. Sept. 11, 2018) ("This Court need not reach that issue [of incorporation of AAA rules] because as discussed above the parties' Arbitration Agreement in the Terms of Use 'clearly and unmistakably' delegates the gateway issues to the arbitrator."); *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *9 (N.D. Cal. Feb. 24, 2017) (finding that an arbitration provision that stated "[a]ll issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision . . ., and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision . . ., including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable," "constitutes clear and unmistakable evidence that the parties agreed that the arbitrator will decide the questions of arbitrability").[23]

Mr. Peterson also claims that the parties' contract is unclear as to whether the AAA Commercial Rules or Consumer Rules would apply and argues that this defeats Lyft's argument that the parties agreed to delegate questions of arbitrability to the arbitrator.[24] Mr. Peterson cites no authority to support his argument,[25] and courts have rejected it. *Khraibut*, 2016 WL 1070662, at *5 (question about which AAA rules apply "does not create enough ambiguity or confusion to defeat a 'clear and unmistakable' showing" of delegating questions of arbitrability to the arbitrator

---

[23] By contrast, *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016), which Mr. Peterson cites, involved an argument that the parties had agreed to delegate the question of arbitrability because the agreement incorporated AAA rules (which provided for delegation) and not an argument that the parties' agreement itself expressly provided for delegation.

[24] Pl. Opp'n – ECF No. 49 at 6–7.

[25] *See id.*

ORDER – No. 16-cv-07343-LB          7

where the various AAA rules contained the same language regarding delegation); *Galen v. Redfin Corp.*, No. 14-cv-05229-TEH, 2015 WL 7734137, at *7 (N.D. Cal. Dec. 1, 2015) (same).[26]

**2. Unconscionability**

**2.1 Governing Law**

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The court determines whether the putative arbitration agreement is enforceable under the laws of the state where the contract was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

In California, contractual unconscionability has both procedural and substantive components. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). "Procedural and substantive unconscionability 'need not be present in the same degree.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910). "Under California law, 'the party opposing arbitration bears the burden of proving . . .

---

[26] The AAA's Commercial Rules and Consumer Rules have identical provisions regarding delegation: both provide that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Blavin Decl. Ex. C (AAA Commercial Rules) – ECF No. 39-8 at 14 (R-7(a)); Blavin Decl. Ex. D (AAA Consumer Rules) – ECF No. 39-9 at 18 (R-14(a)).

unconsciounability.'" *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

## 2.2 Application

As the party opposing arbitration, Mr. Peterson has the burden of proving unconscionability.

### 2.2.1 Procedural unconscionability

The only thing Mr. Peterson offers regarding procedural unconscionability is an argument that the arbitration provision is a contract of adhesion.[27] At best, this presents a minimal level of procedural unconscionability. *Cf. Loewen*, 129 F. Supp. 3d at 958 (finding that this same Lyft Terms-of-Service agreement presented "a minimal degree of procedural unconscionability"). Consequently, "'the [arbitration] agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Poublon*, 846 F.3d at 1261 (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).

### 2.2.2 Substantive unconscionability

Mr. Peterson first argues that the arbitration provision is substantively unconscionable because it provides for delegation of the question of arbitrability under the AAA Commercial Rules when, so he argues, Lyft itself believes the AAA Consumer Rules should apply.[28] This overly simplifies Lyft's argument. Lyft argues that the applicable AAA Commercial Rules themselves provide that disputes arising out of a consumer arbitration agreement may be administered under the AAA Consumer Rules.[29] In any event, Mr. Peterson cites no authorities that support his argument or satisfy his burden of establishing unconscionability.[30]

---

[27] Pl. Opp'n – ECF No. 49 at 11.

[28] *Id.* at 11–12.

[29] Def. Mot. – ECF No. 39 at n.14 ("[T]he Commercial Arbitration Rules explain that any 'dispute arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules.'") (quoting Blavin Decl. Ex. C (AAA Commercial Rules) – ECF No. 39-8 at 11 (R-1)); Def. Reply – ECF No. 50 at 12 ("[T]here is no ambiguity as to the applicable AAA Rules — it is clear that the Commercial Rules generally apply but that the arbitrator may nonetheless apply the Consumer Rules when appropriate.").

[30] *See* Pl. Opp'n – ECF No. 49 at 11–12.

Mr. Peterson next argues that the arbitration provision is substantively unconscionable because Lyft can unilaterally modify it.[31] Mr. Peterson cites no authorities that support his argument.[32] The Ninth Circuit has held that a unilateral modification clause does not per se make an arbitration provision unconscionable, because "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (citing cases). "Although . . . a unilateral modification provision itself may be unconscionable, . . . such an unconscionable provision [does not necessarily] make[] the arbitration provision or the contract as a whole unenforceable." *Id.* (citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 & n.23 (9th Cir. 2003)). Additionally, even if the unilateral modification were unconscionable, Mr. Peterson does not claim that Lyft acted unreasonably to alter the contract terms, so this at best presents mild substantive unconscionability. *Cf. Loewen*, 129 F. Supp. 3d at 959–60.

Third, Mr. Peterson argues that AAA rules contain a privacy provision that is unconscionable, citing *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).[33] As the Ninth Circuit has held, subsequent California state-court decisions have undermined the holding in *Ting*. Under current California and Ninth Circuit law, privacy provisions like the one at issue do not render the arbitration provision unconscionable. *Poublon*, 846 F.3d at 1265–67 (citing *Ting*, *Sanchez v. CarMax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 398, 408 (2014), and other authorities).

Finally, Mr. Peterson argues that the arbitration provision waives his statutory right to bring a claim under the California Private Attorney General Act ("PAGA") and that this waiver is unconscionable.[34] This argument fails for two reasons. First, the Ninth Circuit has held that while a PAGA-claim waiver in an agreement is unenforceable, such a waiver does not render an arbitration provision in the agreement substantively unconscionable. *Poublon*, 846 F.3d at 1264.

---

[31] *Id.* at 12.

[32] *See id.*

[33] *Id.*

[34] *Id.* at 13–14.

ORDER – No. 16-cv-07343-LB 10

Second, Mr. Peterson has not pleaded a PAGA claim in any event, and thus lacks standing to challenge a PAGA waiver provision that is not being applied to him. *Gerton v. Fortiss, LLC*, No. 15-cv-04805-TEH, 2016 WL 613011, at *3 n.3 (N.D. Cal. Feb. 16, 2016) (citing *Arellano v. T-Mobile USA, Inc.*, No. 10-05663 WHA, 2011 WL 1362165, at *5 (N.D. Cal. Apr. 11, 2011)).

## CONCLUSION

The court finds that (1) the parties entered into a binding agreement that contains an arbitration provision, (2) the parties in their arbitration provision delegated questions about the arbitrability of disputes — such as whether Mr. Peterson's FCRA claim falls within the scope of the arbitration provision — to the arbitrator, and (3) the arbitration provision is enforceable and not unconscionable. The court grants Lyft's motion to compel arbitration and dismisses this action. *Cf. Loewen*, 129 F. Supp. 3d at 966 ("Because the Court concludes that arbitration should be compelled, it has the discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely. Neither side has presented any compelling reason to keep this case on the Court's docket and the case is hereby dismissed.") (citations omitted).

**IT IS SO ORDERED.**

Dated: November 19, 2018

_____
LAUREL BEELER
United States Magistrate Judge